[Cite as *Fabian v. May*, 2021-Ohio-2882.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

TODD FABIAN, et al.,

        Plaintiffs-Appellants,

  - v -

TIMOTHY MAY, et al.,

        Defendants-Appellees.

CASE NO. 2020-T-0071

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2018 CV 02196

## O P I N I O N

Decided: August 23, 2021
Judgment: Affirmed

*John R. Liber, II,* Thrasher, Dinsmore & Dolan, 100 Seventh Avenue, Suite 150, Chardon, OH 44024 (For Plaintiffs-Appellants).

*Frank G. Mazgaj*, *Emily R. Yoder,* and *Frank G. Mazgaj, Jr*., Hanna, Campbell & Powell, LLP, 3737 Embassy Parkway, Suite 100, Akron, OH 44333 (For Defendants-Appellees).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants, Todd and Judith Fabian, appeal the grant of summary judgment in favor of defendants-appellees, Timothy May and Ronald Newell, as to their premises liability claims. For the following reasons, we affirm the judgment of the court below.

{¶2} On December 13, 2018, the Fabians filed a Complaint in the Trumbull County Court of Common Pleas against May, Newell, and Grange Mutual Casualty Company. Grange was subsequently dismissed and is not a party to this appeal. With

respect to May and Newell, the Complaint raised claims of premises liability and loss of consortium. The Complaint alleged:

> On or about January 25, 2017, Plaintiff Todd Fabian was visiting Ron Newell at the home [owned by Timothy May] located at 1604 West Montrose, Youngstown, Ohio 44505. Upon exiting the structure through the rear door, Mr. Fabian headed to a wooden ramp attached to the rear deck. Upon stepping on the ramp, his foot slipped from under him and he fell striking a metal post with his leg resulting in serious injury.

{¶3} On August 21, 2020, the trial court granted summary judgment in favor of Newell and May, on the grounds that "the ramp itself was an open-and-obvious danger of which there was no duty to warn."

{¶4} On September 14, 2020, the Fabians filed a Notice of Appeal. On appeal, they raise the following assignments of error:

{¶5} "[1.] The trial court erred in granting Defendants-Appellees' Motion for Summary Judgment by failing to view the evidence in a light most favorable to Plaintiff[s]-Appellants when a genuine issue of material fact existed as to whether Ronald Newell owed a duty to warn Todd Fabian of the slippery condition of the ramp at his premises and whether the slippery condition of the ramp was hidden to Mr. Fabian."

{¶6} "[2.] The trial court erred in granting Defendants-Appellees' Motion for Summary Judgment by finding the subject ramp presented an open and obvious hazard where the slipperiness of dew on the ramp was a latent condition that is not objectively discernable."

{¶7} Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse

2

to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C). An appellate court's "review of a summary-judgment ruling is de novo." *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶ 6.

{¶8} Todd Fabian was present on the subject premises to transport Newell to an appointment, thus making him an invitee. *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951), paragraph one of the syllabus (an invitee is "one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest"); *Squire v. Squire*, 11th Dist. Geauga No. 92-G-1710, 1993 WL 76264, *4. Accordingly, Newell was under a duty to "exercise ordinary care to guard * * * against danger" and "to render the premises reasonably safe for invitees." *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925), paragraph one of the syllabus.

{¶9} The open-and-obvious doctrine provides: "An occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). "Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* "When applicable * * *, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-

3

2573, 788 N.E.2d 1088, ¶ 5.

{¶10} The following evidence relevant to the claims against Newell and May was before the trial court for consideration:

{¶11} Timothy May testified by deposition that he purchased the property at 1604 West Montrose three to four years before renting the property to Newell. At the time he purchased the property, there was a wooden ramp leading from a carport to an entrance to the residence on a raised deck. The lower portion of the ramp was covered by the carport and the upper portion was exposed to the elements. The deck/entrance could also be accessed by ascending three steps. May lived on the property prior to Newell and, during that time, did not notice the ramp being slippery.

{¶12} Ronald Newell testified by deposition that Todd Fabian is his brother-in-law. Newell had lived at the Montrose Road residence for about two years prior to the incident under a "rent to own" agreement with May. On January 25, 2017, Fabian arrived at the residence at about 8:30 in the morning. Fabian approached the entrance from the carport using the ramp. As Newell was locking the entrance, he heard Fabian fall and hit the ramp. Newell went to Fabian to see if he was okay and noticed dew on the ramp. Newell was aware that the ramp became slippery when there was moisture, such as dew, and had "slid" on it before. He intended to warn Fabian to be careful when using the ramp as they were leaving the residence.

{¶13} Todd Fabian testified by deposition that he had been to Newell's residence once prior to January 2017 but had not used the ramp on that occasion. On the morning in question, the ramp appeared to be dry, and he ascended the ramp without difficulty. As he began to descend the ramp, "my feet literally just went out from underneath me."

4

Fabian believed it was the ramp's design and construction that caused him to fall: "I have a background in construction * * *. I spend my life walking in and out of job sites. I walk on ramps sometimes three to four times a day. I knew that there was something wrong with this situation that my feet just went out from underneath me and I impacted myself like that. * * * I think that the use of the substrate * * * on the deck that was not built to code was basically illegal in nature * * *, was very slick, just because of what it was manufactured out of. And the angle of the slope is way beyond what would be safe for a person to transverse [sic] on." Following the incident, Newell confided to Fabian that the ramp was dangerous and other people had fallen on it.

{¶14} Richard L. Zimmerman, a registered architect, submitted an affidavit in which he opined that "conditions at the incident location were deficient, violated applicable Codes, Ordinances and standards, and proximately caused the fall and injury of Todd Fabian." Zimmerman identified the following conditions:

> The ramp violated the RCO [Residential Code of Ohio], as it was sloped more than 1 unit vertical in 8 units horizontal, and in fact sloped 27 inches vertical in 117 inches horizontal.
>
> The ramp violated the RCO, as it was not provided with a handrail along at least one side of the full length of the ramp.
>
> The ramp was constructed of pressure treated lumber, which over time allows liquid preservative to weep, making that lumber slick and slippery. As the lumber had been pressure treated, rain water, snow melt water, dew, or humidity on its upper surfaces would not be able to penetrate the lumber, thereby remaining on lumber surfaces, further contributing to making them slick and slippery.
>
> Depending on ambient conditions and one's viewing angle and vision, pressure treated lumber may or may not look dry, damp, wet or slick. It is therefore quite often difficult if not impossible to readily discern the dampness, wetness, slickness or slipperiness of pressure treated lumber on approach.

5

> The human dynamics of ascending and descending ramps are markedly dissimilar. On ascent, a person's weight is often well-centered perpendicularly over the relatively sizeable and flat ball of the forward foot and shoe, thereby creating relatively solid contact and suitable traction. On descent, however, one makes first contact with the ramp with the smaller and rounded heel of the foot and shoe, with an angular approach of the extended leg, and with the person's weight shifting forward from the rear. Thus, it is far easier and much more likely that a slip and fall upon a ramp will occur in descent rather than ascent.

{¶15} The evidence presented supports two theories of liability. The first is based on the design and construction of the ramp itself. The second is based on the presence of moisture or dew on the ramp in combination with its purportedly negligent design. These shall be considered separately.

{¶16} With respect to the Fabians' claim that the design of the ramp violated the building code and industry standards, we note that such violations do not preclude the application of the open-and-obvious doctrine. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 17-21 (claims based on administrative code violations do not constitute negligence per se and, thus, the open-and-obvious doctrine is an applicable defense); *Guthrie v. Giant Eagle, Inc.*, 7th Dist. Mahoning No. 20 MA 0091, 2021-Ohio-1268, ¶ 21 ("[t]he open and obvious doctrine applies to all negligence claims against the owner or occupier of premises, including negligent maintenance and negligent design"). In fact, the open-and-obvious doctrine has often been found to apply to claims based on negligent design or construction of stairs and ramps similar to the present case. *Snyder v. Kings Sleep Shop, L.L.C.*, 6th Dist. Williams No. WM-13-006, 2014-Ohio-1003, ¶ 18 ("[t]he incline of the ramp was sufficient to be sensed by someone walking on it"); *Dynowski v. Solon*, 183 Ohio App.3d 364, 2009-Ohio-

6

3297, 917 N.E.2d 286, ¶ 35 (8th Dist.) ("the slope of the ramp, the lack of a handrail, and the slip-resistant material on only one side of the ramp are conditions readily apparent to anyone"); *Ryan v. Guan*, 5th Dist. Licking No. 2003CA00110, 2004-Ohio-4032, ¶ 12 ("the hazard presented by the slope was open and obvious, even though the exact degree of the slope was unknown").

{¶17} Likewise in the present case, there was nothing about the design or construction of the ramp – neither its slope nor its lack of a handrail nor its general construction – that was not readily observable to Fabian. The issue then becomes whether "the invisible hazard of the morning dew" that Newell testified was present on the ramp precludes the application of the open-and-obvious doctrine.

{¶18} This court and others have recognized that "water is inherently slippery and can create dangerous conditions that would be obvious to a reasonable person." (Citation omitted.) *Daher v. Bally's Total Fitness*, 11th Dist. Lake No. 2014-L-061, 2015-Ohio- 953, ¶ 34; *Andamasaris v. Annunciation Greek Orthodox Church*, 9th Dist. Summit No. 22191, 2005-Ohio-475, ¶ 15; *S. S. Kresge Co. v. Fader*, 116 Ohio St. 718, 723, 158 N.E. 174 (1927) ("every one knows that a damp floor is likely to be a little more slippery than a dry floor").

{¶19} Furthermore, the fact that dew is a naturally occurring form of moisture is also grounds for affirming the judgment in favor of May and Newell. The Ohio Supreme Court has recognized that, because of the impracticability of avoiding the "presence of rain and other natural forms of moisture" on surfaces, "especially when located out of doors or within the entrances of building structures, the law generally declines to fix liability against those creating or maintaining such surfaces or areas in favor of those who

7

slip and fall thereon." *Englehardt v. Philipps*, 136 Ohio St. 73, 78-79, 23 N.E.2d 829 (1939); *Terakedis v. Lin Family Ltd. Partnership*, 10th Dist. Franklin No. 04AP-1172, 2005-Ohio-3985, ¶ 14 ("the hazard associated with walking down a wet wooden ramp with obviously worn slip-resistent [sic] strips is within the common experience of an ordinary person").

{¶20} In the present case, even construing the evidence most strongly in the Fabians' favor, awareness of morning dew, like any other weather condition, must be imputed to Fabian. For the open-and-obvious doctrine to apply, a hazardous condition need not be observed but only observable. *Hopkins v. Greater Cleveland Regional Transit Auth.*, 2019-Ohio-2440, 139 N.E.3d 491, ¶ 16 (8th Dist.) ("[t]he bench mark for the courts is not whether the person saw the object or danger, but whether the object or danger was observable") (citation omitted). In the present case, Fabian did not observe dew either before or after the fall while Newell observed it after the fall. Newell, the only witness to the presence of dew on the ramp, further testified that the dew was observable to anyone and that Fabian should have been aware of its presence.

{¶21} The Fabians place great reliance on the fact that Newell knew that the ramp was hazardous when there was moisture and admitted that he intended to warn Fabian to be careful. Newell testified that he was going to warn Fabian that the ramp "may be slippery" because he did not expect Fabian to appreciate the danger. *See LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986) ("[i]t is only where it is shown that the owner had superior knowledge of the particular danger which caused the injury that liability attaches, because in such a case the invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate").

8

{¶22} Under the circumstances of the present case, Newell's purported superior knowledge of the hazard is illusory. All Newell knew was that the ramp could be slippery when wet. He did not know that there was dew on the ramp on the morning in question as he did not observe the dew until after exiting the residence with Fabian. As noted above, the law already imparts to the reasonable person the knowledge that surfaces may become slippery when wet.

{¶23} Zimmerman's expert testimony does not alter the result. Zimmerman opined that "[d]epending on ambient conditions and one's viewing angle and vision," it would be "difficult if not impossible to readily discern" moisture on the ramp. Zimmerman's opinion is not based on the actual ambient conditions, viewing, and vision relevant to the case in question. In contrast, neither Fabian nor Newell claimed to have any difficulty observing the condition of the ramp on the morning in question. It is also worth noting that Zimmerman compared the presence of moisture from dew or condensation to black ice. Under Ohio law, black ice is treated as a natural accumulation of ice which, under the "no-duty winter rule," relieves the owner or occupier of premises of liability with respect to invitees. *Bakies v. RSM Maintenance, Inc.*, 2019-Ohio-3323, 141 N.E.3d 635, ¶ 23 and 27 (3d Dist.). While distinct from the open-and-obvious doctrine, both rules act to relieve the premises owner or occupier of liability.

{¶24} Finally, the Fabians assert that the grant of summary judgment must be reversed based on statements made by the trial court that are either unsupported by the record or fail to construe the evidence in their favor. *E.g.*: the ramp "was not slippery, it was not wet"; Fabian was "not a stranger to the Newell residence"; and "to the naked eye, this ramp appears to be something which one must take great care in traversing." Such

9

Case No. 2020-T-0071

statements do not require reversal. The de novo standard of review applicable when reviewing a grant of summary judgment requires this court to consider the merits of the grant "independently and without deference to the trial court's decision." *Hedrick v. Szep*, 11th Dist. Geauga No. 2020-G-0272, 2021-Ohio-1851, ¶ 13. Accordingly, this court will "not reverse a judgment that is based on 'erroneous reasons.'" *Hamrock v. Ams*, 2020-Ohio-1335, 153 N.E.3d 506, ¶ 38 (11th Dist.).

{¶25} The two assignments of error are without merit.

{¶26} For the foregoing reasons, we affirm the judgment of the lower court dismissing the Fabians' premises liability claims against May and Newell. Costs to be taxed against the appellants.


THOMAS R. WRIGHT, J.,

STEPHEN W. POWELL, J., Twelfth District Court of Appeals, sitting by assignment,

concur.

Case No. 2020-T-0071